UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

HANOVER INSURANCE COMPANY

    Plaintiff

-vs-

VERMONT MUTUAL INSURANCE GROUP

    Defendant

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HANOVER'S MOTION FOR SUMMARY JUDGMENT**

Index No.: 13-CV-860 (TJM)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
HANOVER'S MOTION FOR SUMMARY JUDGMENT**

Thomas P. Kawalec, Esq.
Katelyn E. Dieffenderfer, Esq.
Chelus, Herdzik, Speyer & Monte, P.C.
Attorneys for Plaintiff
HANOVER INSURANCE COMPANY
Office and Post Office Address
Main Court Building
438 Main Street, Tenth Floor
Buffalo, New York 14202
Telephone: (716) 852-3600

Table of Contents

TABLE OF AUTHORITIES………………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………………..1

POINT 1

    VERMONT MUTUAL'S ASSERTION THAT THE POLICY AT ISSUE
    IN <u>NATIONAL UNION</u> DID NOT CONTAIN A NON-CUMULATION
    CLAUSE IS MISLEADING……………………………………………………………1

POINT 2

    A PLAIN READING OF THE VERMONT MUTUAL NON-CUMULATION
    CLAUSE ALLOWS STACKING OF THE THREE POLICIES AT ISSUE…………..5

    A. A plain reading of Vermont Mutual's non-cumulation clause supports
       Hanover's position that the polices stack………………………………………….5

    B. Vermont Mutual erroneously argues that plaintiff relies upon the use
       of punctuation in <u>Hiraldo</u> to create an inaccurate analysis of the court's
       decision……………………………………………………………………………..7

POINT 3

    THE DEFENDANT'S REMAINING CONTENTIONS ARE UNAVAILING………....8

    A. The definition of "occurrence" alone does not bar stacking of policies……………..8

    B. The language of the Vermont Mutual policy applies to one policy period
       not multiple policies……………………………………………………………..9

    C. Contrary to defendant's arguments, plaintiff has provided evidence
       in admissible form that the infant was injured in all three policy periods
       at issue……………………………………………………………………………..10

    D. Rates determined by Vermont Mutual's underwriting department are
       irrelevant to this case……………………………………………………………..13

CONCLUSION…………………………………………………………………………….14

Table of Authorities

**Cases**
748 F2d 760 (2d Cir. 1984) ............................................................................................... 11
Bahar v. Allstate Insurance Co.,
American Home Products Corp. v. Liberty Mut. Ins., Co.,
   565 F. Sup 1485 (S.D.NY 1983) .................................................................................. 11
Bahar v. Allstate Insurance Co.,
   2004 W.L. 1782552 (S.D.N.Y. 2004) ............................................................................ 8
City of Chicago,
   260 F.3d at 794 (7th Cir. 2001) ......................................................................... 9, 12, 13
Endicott Johnson Corp. v. Liberty Mutual Ins. Co.,
   928 F. Supp. 176 (N.D.N.Y. 1996) ...................................................................... 5, 6, 11
Greene v. Allstate Insurance Co.,
   2004 W.L. 1335927 (S.D.N.Y. 2004) ............................................................................ 8
Greenridge v. Allstate Insurance Co.,
   312 F.Supp.2d 430 (S.D.N.Y. 2004), ............................................................................ 9
Hiraldo v. Allstate Ins. Co.,
   5 N.Y.3d 508 (2005) ............................................................................................. 5, 6, 7
Hiraldo v. Allstate Ins. Co.,
   8 A.D.3d 230 (2d Dep't 2004) ............................................................................ 5, 6, 7, 8
In re Liquidation of Midland Ins. Co.,
   269 A.D.2d 50, (1st Dep't 2011) .................................................................................... 8
National Union Fire Insurance, Co. v. Farmington Casualty Co.,
   1 Misc.3d 671 (N.Y. County, 2003) ..................................................................... 1, 2, 6

**Rules**
FRE Rule 702 ..................................................................................................................... 12

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in reply to defendant, VERMONT MUTUAL INSURANCE GROUP's (hereinafter VERMONT MUTUAL), Memorandum of Law in opposition to HANOVER INSURANCE COMPANY's (hereinafter HANOVER,) Motion for Summary Judgment and in further support of HANOVER's Motion for Summary Judgment.

**POINT I**

**VERMONT MUTUAL'S ASSERTION THAT THE POLICY AT ISSUE IN <u>NATIONAL UNION</u> DID NOT CONTAIN A NON-CUMULATION CLAUSE IS MISLEADING.**

As noted in HANOVER's initial Memorandum of Law, <u>National Union Fire Insurance, Co. v. Farmington Casualty Co.</u>, 1 Misc.3d 671 (N.Y. County, 2003) stands for the proposition that, in cases where lead exposure spans more than one policy period, the policies may be stacked. The court in <u>National Union</u> critically noted that under Farmington's interpretation of its policy language, which is identical to VERMONT MUTUAL's interpretation herein, "when a landlord renewed its policy and paid a premium for a second year, the landlord procured no additional protection regarding lead paint claims" leading to a windfall to the insurer, whose liability over multiple policy years is no more than the liability limit for more than one of those years. <u>Id</u>. at 674.

Counsel for the Defendant argued that <u>National Union</u> must be distinguished from this case because the Farmington policy "did not even involve a non-cumulation paragraph." See Doc. #40-3, p. 19. Defendant's counsel cites to **Exhibits U and V**, which he states are the "Farmington Casualty Company's Property/Liability" polices. See Doc. #40, numbers 4 and 5. VERMONT MUTUAL argues that since its policy includes such a clause, its policies cannot be stacked in this case.

A cursory review of what purports to be an accurate and complete copy of the Farmington policy at issue in <u>National Union</u> indeed yields no "non-cumulation" clause. However, the 1990-1991

1

policy's Table of Contents makes it apparent that the policy contains two main sections: one relating to property claims (where a non-cumulation clause would not be found) and a section relating to liability (where "non-cumulation" clauses would be included). See Doc. #40-1, **Exhibit U**, pp. 3 and 7.[1]

Even though the aforementioned Table of Contents plainly indicates that a commercial general liability coverage form, with sections related to liability coverage (at issue in National Union and in this matter) and its definitions and limitations, was part of the policy issued by Farmington, a careful review of the policies attached by defendant's counsel shows that precisely those sections are entirely missing and not disclosed to this Court. While the defendant's counsel is correct in noting that the "non-cumulation" clause is not present in the sections of the Farmington policies that he attached, the commercial general liability portion of the policy is noticeably absent from what purports to be an accurate copy of the policies.

We have procured a copy of the 1991-1992 Commercial General Liability policy[2] at issue in National Union from the New York Supreme Court Archives for New York County. See Exhibit A to this Reply Memorandum of Law and Declaration of Joseph Claudio, attached.

In the Farmington Insurance policy at issue in National Union, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See **Exhibit A**, to this Reply Memorandum of Law, p. 18. This language is nearly identical to the definition of "occurrence" in the VERMONT MUTUAL policies.[3]

---

[1] The attached 1991-1992 policy lacks a Table of Contents and does not contain a section related to liability, even though the National Union Court specifically stated that each of the Farmington policies at issue relative to coverage for four Infant tenants injured by lead paint contained a liability section relative to bodily injury. Parenthetically, the National Union Court stated: "Here, the policies issued by Farmington over a two-year period each provided for a limitation of liability of $1,000,000 "for any one occurrence". See id. at 674.

[2] The National Union Court stated that both of the Farmington policies at issue provided the same coverage and limitations. See id. at 674

[3] The "DEFINITIONS" section of the "PERSONAL LIABILITY" section of the policy defines "occurrence" as follows:

2

According to the Declarations Page, "Coverage A covers Bodily Injury and Property Damage Liability. There is a $1M limit for **any one occurrence** subject to the Products/Completed Operations and General Aggregate Limits of Liability." Exhibit A, p. 5. (Emphasis in the original).

The Farmington policy also notes that "Each Occurrence Limit is the most we will pay for the sum of: a. Damages under Coverage A [covers Bodily Injury]; and b. Medical Expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence"." **Exhibit A, p. 12.**

Pursuant to the Farmington policy provisions relating to the definition of "occurrence", Farmington made identical arguments now made by VERMONT MUTUAL. Even though the policy notes that the policy limit is "$1,000,000" "for **any one occurrence**"[4], the Court concluded that the provisions did not bar stacking of two consecutive policies.

Additionally, the non-cumulation clause of the Farmington liability policy states: "[t]he Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: a. 'Insureds'; b. Claims made or 'suits' brought; or c. Persons or organizations making claims or bringing 'suits'." See **Exhibit A, p. 12, Section III.**

The non-cumulation clause in the Farmington policy, which the <u>National Union</u> Court interpreted to allow stacking, is similar to the VERMONT MUTUAL non-cumulation clause. Like the VERMONT MUTUAL policy and in contrast to the Allstate policy (discussed *infra*), the Farmington policy lacks any provision that would limit Farmington's obligations to insurance limits of one policy period and fails to include a modifier that would bar stacking of multiple policies (see Point II, *infra*).

---

"An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in: a. "Bodily injury" ...VERMONT MUTUAL Policy–DEFINITIONS–¶ 5. (Plaintiff's Appendix, Exhibit N, page 24).

[4] "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See **Exhibit A, p. 18.**

3

Although the defendant alleged that the Farmington policies fail to "address non-cumulation limitations", the complete copy of the Farmington policy certainly leads to a contrary conclusion. See Doc. #40-3, p. 19. Not only does the Farmington policy include a nearly identical definition of "occurrence" but it also includes a "non-cumulation" clause, that much like the clause used by VERMONT MUTUAL, lacks the requisite protections from stacking of multiple policy periods. Despite Farmington's attempts to shield itself from the potential of stacking of multiple policy periods through limitations afforded by the definition of "occurrence," the non-cumulation clause, and other policy limitations discussed above, the National Union Court makes clear that nothing in the Farmington policy forbade stacking of multiple policies.

It is submitted that there is similarly nothing in the VERMONT MUTUAL policy that prohibits the stacking of its policies. Since, in its policy, VERMONT MUTUAL utilizes substantially similar language as used by Farmington, an identical result is warranted in this case.

Considering that the defendant attempts to distinguish National Union due to the lack of a non-cumulation clause, the defendant's arguments are now clearly ineffective. The non-cumulation clause and other coverage limitations existed in the Farmington policy but simply were not provided to this Court.

Farmington's attempts to prevent stacking were ineffective. Much as in National Union, the similar policy limitations used by VERMONT MUTUAL in this case are ineffective to prevent stacking, thereby warranting summary judgment in favor of HANOVER.

# POINT II
# A PLAIN READING OF THE VERMONT MUTUAL NON-CUMULATION CLAUSE ALLOWS STACKING OF THE THREE POLICIES AT ISSUE.

## A. A PLAIN READING OF VERMONT MUTUAL'S NON-CUMULATION CLAUSE SUPPORTS HANOVER'S POSITION THAT THE POLICES STACK.

The defendant repeatedly argues that its non-cumulation clause should be given its plain language interpretation. A plain language interpretation of VERMONT MUTUAL's non-cumulation clause reflects that it intended to limit its liability during each policy period but not regardless of the number of policies renewed by its insureds. Since the "limit of liability" section of the policy (Plaintiff's Appendix, **Exhibit N**, p. 28) makes no reference to the number of policies, VERMONT MUTUAL is essentially asking the Court to read in that intention when the intention is not expressly made in its policy.

VERMONT MUTUAL suggests that the "regardless" clause is merely an extraneous "descriptive modifier" unnecessary to the interpretation of the non-cumulation clause. In actuality, this clause is the exact mechanism that allowed Allstate to limit its exposure to one policy period in Hiraldo v. Allstate Ins. Co., 5 N.Y.3d 508 (2005), *affirming* Hiraldo v. Allstate Ins. Co., 8 A.D.3d 230 (2d Dep't 2004). The Hiraldo Court focused exclusively on what the defendant has chosen to label a "descriptive modifier" in determining that Allstate's policies would not stack. Without inclusion of the word "policies", there is nothing in the VERMONT MUTUAL's non-cumulation clause that suggests the liability limitations apply to more than one policy period.[5]

---

[5] Furthermore, a review of the case law cited by both parties makes it abundantly clear that the non-cumulation clause can provide protection to the insured when drafted in an effective matter. VERMONT MUTUAL fell short in drafting its non-cumulation clause to invoke the protection sought by Allstate in Hiraldo and by Liberty Mutual in Endicott. Hiraldo v. Allstate Insurance Co., 5 N.Y.3d 508 (2005); Endicott Johnson Corp. v. Liberty Mutual Ins. Co., 928 F. Supp. 176 (N.D.N.Y. 1996).

Without this limitation, an "occurrence" that leads to an "injury" during the policy period triggers that policy and obligates VERMONT MUTUAL to potentially indemnify its insured up to the policy limit. The limitations relative to the definition of "occurrence" operate only during that policy period, as do all other limitations on indemnity such as the policy limits. See generally National Union, supra. In fact, as the policy provisions are sent to the insured at or around the time that the policy is renewed, the insured would rightfully expect that the policy language applies only in regard to that particular policy period and not, unless stated otherwise, to multiple policy periods.[6] Nothing in the definition of "occurrence" as it appears in the VERMONT MUTUAL policy suggests that the same "occurrence" that spans multiple policy periods limits VERMONT MUTUAL's indemnity obligations to the policy limit of one policy period. It is submitted that this is exactly the reason that a properly worded non-cumulation clause is crucial in limiting the potential stacking of the policies. As will be discussed, *infra*, the VERMONT MUTUAL non-cumulation clause fails in this regard.

As nothing prevented VERMONT MUTUAL from utilizing language similar to that in the Allstate policy at issue in Hiraldo, supra, and the Liberty Mutual policy at issue in Endicott, infra, VERMONT MUTUAL cannot attempt to invoke those policies as grounds for its position that stacking in the instant matter is barred.[7] A fair reading of the policy, given its plain meaning, supports HANOVER's position.

---

[6] It is stated otherwise by Allstate in Hiraldo and by Liberty Mutual in Endicott. Hiraldo v. Allstate Insurance Co., 5 N.Y.3d 508 (2005); Endicott Johnson Corp. v. Liberty Mutual Ins. Co., 928 F. Supp. 176 (N.D.N.Y. 1996).

[7] In Hiraldo, Allstate had included the specific language in its non-cumulation clause of "**regardless** of the number...**policies** involved." See id at 513. (Emphasis added). In Endicott, the Federal Court Northern District of New York, held that Liberty Mutual's policies could not be stacked based on the wording in its non-cumulation clause, which is completely distinguishable from the wording used by Vermont Mutual, and based on the existence of a "Deemer" clause. See id. at 179-180. The fact that the Liberty Mutual non-cumulation clause provides for a reduction of each occurrence limit by the amount that Liberty Mutual has paid for the same occurrence under the previous policy completely distinguishes it from VERMONT MUTUAL's policy, which contains no such language.

**B. VERMONT MUTUAL ERRONEOUSLY ARGUES THAT PLAINTIFF RELIES UPON THE USE OF PUNCTATION IN <u>HIRALDO</u> TO CREATE AN INACCURATE ANALYSIS OF THE COURT'S DECISION.**

In his opposing Memorandum of Law, Doc. # 53-2, p. 11, Mr. Miranda noted that "plaintiff relies upon the use of an ellipses in <u>Hiraldo</u> to jump to the conclusion that the Court staked its holding on the presence of the word "policies" within the "regardless" clause" thereby purportedly giving undue attention to the phrase missing from VERMONT MUTUAL's policy. In fact, HANOVER did not insert the ellipses, the <u>Hiraldo</u> Court did in its opinion.[8] In fact, the very language the Court excluded from its quotation to Allstate's non-cumulation clause through the use of the ellipses is the only language present in VERMONT MUTUAL's non-cumulation clause. Unlike the defendant, the <u>Hiraldo</u> Court gives no credence to the portion of the Allstate non-cumulation clause that mirrors the VERMONT MUTUAL clause. Rather, in deciding that the Allstate policies did not stack, the Court of Appeals directly focuses and bases its decision on the Allstate language conspicuously absent from VERMONT MUTUAL's non-cumulation clause. See <u>id</u>.

The Court was not paraphrasing when it used the ellipses. See <u>id</u>. Rather, it is submitted that the Court used the ellipses to omit the language in Allstate's non-cumulation clause that it felt was irrelevant to its analysis and holding. It is that very language, found irrelevant by the Court of Appeals, which the Defendant triumphs as dispositive in its favor. If the rationale of the Court of Appeals is utilized in this matter, VERMONT MUTUALS's argument must fail since its policy did not include the very phrase found by the Court of Appeals to be dispositive with respect to the non-cumulation of the policies.

As noted in the preceding section, the definition of "occurrence" provides certain protections within each of the policy periods but not across all policy periods. That protection is left to the non-

---

[8] The specific language used by the <u>Hiraldo</u> Court is as follows, "[t]he non-cumulation clause says that '[r]egardless of the number of…policies involved, [Allstate's] total liability under business liability protection coverage BLP for damages resulting from one loss will not exceed the limit of liability…shown on the declarations page." See <u>id</u>. at 513.

7

cumulation clause. The non-cumulation clause, without reference to the "number of policies," provides protection within only one policy period.

The Court of Appeals' analysis of Allstate's non-cumulation clause makes it clear that VERMONT MUTUAL's non-cumulation clause does not provide the protection sought by VERMONT MUTUAL against stacking of its policies.

### POINT III:

### THE DEFENDANT'S REMAINING CONTENTIONS ARE UNAVAILING.

**A. THE DEFINITION OF "OCCURRENCE" ALONE DOES NOT BAR STACKING OF POLICIES.**

In re Liquidation of Midland Ins. Co., 269 A.D.2d 50, (1st Dep't 2011) is cited by defendant for the proposition that the definition of "occurrence" can alone bar stacking of policies. That decision is not relevant to this case as it analyzes a wholly different factual scenario and legal questions than those present here. In Midland, LAQ was a corporation that engaged in the mining, milling and selling of asbestos fiber. See id. at 52. Midland Insurance was an excess insurer for LAQ. Id. The Court was not asked to analyze non-cumulation provisions or resolve a dispute regarding stacking of policies. See id. Rather, Midland argued that its policy was not triggered unless injury resulted from more than mere exposure to asbestos fibers. Id. at 60-62.

Defendant has taken dicta from the Midland case out of context in an attempt to support its position that the definition of "occurrence" bars stacking even though the Midland Court did not discuss, analyze or decide the issue of stacking. It did not analyze any "non-cumulation" clauses in conjunction with the definition of "occurrence." Not only was it decided prior to Hiraldo, supra, wherein the Court of Appeals sets forth a map for a proper analysis of the stacking issue, but also prior to the analyses of an appropriately worded "non-cumulation" clauses in Greene v. Allstate Insurance Co., 2004 W.L. 1335927 (S.D.N.Y. 2004); Bahar v. Allstate Insurance Co., 2004 W.L. 1782552 (S.D.N.Y. 2004); and

8

Greenridge v. Allstate Insurance Co., 312 F.Supp.2d 430 (S.D.N.Y. 2004), *aff'd* 446 F3d 356 (2d Circ. 2006). As such, the Midland Court's dicta relative to stacking is hardly dispositive.

Furthermore, defendant's argument that Great Lake Dredge & Doc. Co. v. City of Chicago, 260 F.3d at 794 (7th Cir. 2001) forbids stacking of its policies based on the definition of "occurrence" is unavailing. Great Lake is not controlling case law in New York, as it originates from the Seventh Circuit. Even if it were persuasive precedent, Great Lake it is distinguishable from this case as it discussed allocation of insurance after The Chicago Flood of 1992 occurred and the Chicago River drained into a tunnel system connecting many buildings. See id. at 790-791. The Court was only asked to analyze the applicability of insurance policies to one distinct structural failure that occurred in one policy period, not repeated exposure to a toxic substance over the course of multiple policies. Id. It is not relevant to this matter.

## B. THE LANGUAGE OF THE VERMONT MUTUAL POLICY APPLIES TO ONE POLICY PERIOD NOT MULTIPLE POLICIES.

Contrary to defendant's argument, HANOVER has not stated that the VERMONT MUTUAL non-cumulation clause fails to preclude stacking because it lacks "hyper-specificity." Rather, plaintiff simply points out that a plain reading of VERMONT MUTUAL's non-cumulation clause leads to the conclusion that the limitation is meant to apply to only one occurrence per policy period.

The definition of "occurrence" simply necessitates a finding of "continuous exposure" and an "injury". There is nothing in the definition of "occurrence" that limits a finding that an "occurrence" may only take place in one policy period where the exposure and injury span additional policy periods.

In this case, the infant was exposed to lead under each policy period. See Affidavit of Joel Redfield, Ph.D., Doc. #33-5. The infant was injured during the time he was exposed to lead hazards, a time period which spanned all three policy periods. See Affidavit of Joel Redfield, Ph.D., Doc. #33-5,

9

p. 2, paragraph 9. Therefore, since, during each policy period, the infant was exposed to a harmful substance which led to injury, an "occurrence" resulted under each policy period.

Nothing exists in the VERMONT MUTUAL non-cumulation clause precluding stacking of the policies when there is an occurrence under each policy period. Nothing in the VERMONT MUTUAL policy provides that the injury or exposure that occurs in each policy period must be different or distinct from that of the preceding period for each of the policies to be triggered. As such, VERMONT MUTUAL requests that the Court impart language into its policy that simply does not exist.

Without proper anti-stacking protections in the definition of "occurrence", carriers utilize a comprehensive non-cumulation clause to prevent stacking of numerous policies. As noted above, VERMONT MUTUAL's policy falls short in that regard.

### C. CONTRARY TO DEFENDANT'S ARGUMENTS, PLAINTIFF HAS PROVIDED EVIDENCE IN ADMISSIBLE FORM THAT THE INFANT WAS INJURED IN ALL THREE POLICY PERIODS AT ISSUE.

Counsel for VERMONT MUTUAL argues that plaintiff has failed to provide evidence that the Infant was injured in the third policy period and that its position is barred because it relies on the "exposure theory". See Doc. #53-2, page 21. Neither of these assertions is correct.

The plaintiff has submitted proof in admissible form through the Affidavit of Joel Redfield, Ph.D., who reviewed all of the Infant's medical records provided to counsel in this case.

**i. The "injury-in-fact" test.** The plaintiff does not rely on the "exposure theory" but, rather, it relies upon the "injury-in-fact" test, which, according to defense counsel, is the appropriate standard utilized in New York. Defendant asserts that the injury-in-fact test requires that there be an actual documented injury during the policy. See Doc. #53-2, p. 21. However, the case law cited by defendant

does not support this assertion.[9]

The case law proves that defendant's contentions regarding the need for actual documented injury during a policy period for a loss to occur are without merit. In fact, none of the cases cited by defense counsel, nor the policy itself, requires a "documented" injury.[10] VERMONT MUTUAL's policy does not require that injury must be symptomatic or must manifest itself during the policy period. VERMONT MUTUAL cannot now ask the Court to apply these rigid standards to its policy while simultaneously requesting the Court infer the "plain meaning" of its non-cumulation clause.

VERMONT MUTUAL's attempt to persuade the Court that no injury occurred during the first policy period by pointing out that the Infant's elevated blood lead level was first recorded during the second policy period is unavailing. See Doc. #53-2, p. 22. The fact that a blood lead level measurement was not taken until the second policy period does not bar application of the first policy period. See Campbell and American Home Products. Contrary to defendant's arguments, exposure to a toxin is more than sufficient to trigger coverage if injury results from that exposure, regardless of whether the injury manifests itself in the policy period for which the insured seeks coverage. See American Home Products.

In addition, counsel for defendant is not qualified to state that a decline in blood lead levels during the third policy period was proof that the defendant was not injured during the third policy

---

[9] In Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 S.3d 179, 182 (2d Cir. 2001), cited by defendant in Doc. #31-1, p. 14, the Court was asked to render a verdict in the declaratory judgment action brought against the liability insurer on behalf of children who suffered lead poisoning as a result of exposure to lead-based paint to the insured's apartment building. See id. The Second Circuit held that the expert testimony, concluding that the onset of the injury occurred shortly after the children moved into the apartment, was admissible and that it was not necessary for the injured plaintiffs to establish permanent injury or provide evidence of the magnitude of the injuries sustained during the first policy period to recover under the first policy. See id. at 180-181.

[10] The Second Circuit has clearly held that an injury does not have to be documented nor manifest itself during a policy period for the coverage of that policy period to be triggered. See Campbell; American Home Products Corp. v. Liberty Mut. Ins., Co., 565 F. Sup 1485 (S.D.NY 1983), aff'd as modified, 748 F2d 760 (2d Cir. 1984).

period. See FRE Rule 702. Defendant has offered no expert testimony to support these contentions and defense counsel's opinion is insufficient to raise a question of fact.[11]

**ii. Dr. Redfield's opinions are admissible.** Furthermore, defendant is incorrect that the affidavit of Dr. Redfield offers legal conclusions. See Doc. #53-2, p. 23. It is also factually incorrect that the plaintiff makes no reference to the underlying medical data and merely states that the Infant was injured in all three periods because he was exposed to lead in all three periods. See id. Mr. Miranda is mistaken when he states that Dr. Redfield "merely relies on the Infant's residency in the apartment and no blood lead level tests or any other medical data evidencing injury." See Doc #53-2, p. 24.[12]

Mr. Miranda, in his capacity as defense counsel, has reached certain conclusions regarding whether plaintiff's exposure to lead paint caused the requisite injury during the three policy periods.[13] In contrast, the plaintiff provided the expert opinion of Dr. Joel Redfield, who is an expert in evaluating and diagnosing individuals injured by lead paint. The fact that VERMONT MUTUAL has failed to provide expert opinion in admissible form militates toward a finding that the Infant sustained an injury during all three policy periods thereby mandating summary judgment in favor of the Plaintiff.

---

[11] For a more detailed discussion of the law which renders Mr. Miranda incapable of offering an expert opinion related to any medical analysis of the Infant, G.C., we respectfully turn the Court's attention to the discussion in our memorandum of law submitted in reply to VERMONT MUTUAL's Motion for Summary Judgment, Doc. #38, Point II.

[12] The affidavit of Dr. Joel Redfield states the following: "The materials I reviewed include the Infant, G.C.'s, blood-lead level, medical records, inspection documents from the Ulster County Health Department related to the Infant's residence (26A West Chester Street, Kingston, NY) and trial testimony from the physician, who testified in the underlying action. As an expert on lead paint exposure and injury, I rely on objective data from medical records, medical reports, data from home inspections, school reports and empirical data in reaching a conclusion." In addition, Dr. Redfield stated that the data he reviewed relative to his analysis of the Infant, G.C., is the exact type of data in fact experts in the lead paint field reasonably rely upon in forming an opinion on the subject of lead paint injury and exposure. The sworn affidavit of Joel Redfield itself is proof that all of defendant's contentions regarding Dr. Redfield's failure to examine the plaintiff's medical records are simply false.

[13] Notably, the plaintiff's expert and the jury in the underlying action also disagreed with Mr. Miranda and VERMONT MUTUAL, finding that the Infant indeed suffered injury upon exposure. It is for this exact reason that an excess verdict exists.

## D. RATES DETERMINED BY VERMONT MUTUAL'S UNDERWRITING DEPARTMENT ARE IRRELEVANT TO THIS CASE.

VERMONT MUTUAL argues that since it charged its insureds, the Palens, a premium of $162.00 per policy period, VERMONT MUTUAL expected to be held liable to no more than $300,000.00. See Doc. #53-2, p. 18. VERMONT MUTUAL also argues "if VERMONT had expected to be liable for $900,000.00 for one occurrence, it surely would have charged the insured a higher premium than $162.00 per year. It simply does not make sense that VERMONT would charge a total of $366.00 in total premium for $900,000.00 of coverage for one interrupted occurrence." See id.

VERMONT MUTUAL's expectations as to its collective liability if its policies stack are not relevant to whether the policies indeed stack. The rate used by VERMONT MUTUAL when assessing the risk in offering the Palens a liability policy is completely irrelevant to this case. The fact that VERMONT MUTUAL concluded that it was protected by its non-cumulation clause is also unimportant. The policy written by VERMONT MUTUAL and provided to the Palens was the bargain that the defendant struck. As such, there is nothing to indicate that VERMONT MUTUAL charged a premium of $162.00 per policy period with the expectation that its liability would be limited to $300,000.00 per occurrence regardless of the number of policy periods at issue, aside from the assertions made by Mr. Miranda.

If VERMONT MUTUAL utilized a robust non-cumulation clause like those used by Allstate and Liberty Mutual, perhaps its premiums would be better correlated to its exposure. The fact that it failed to do so is not a factor in interpreting its policy language.

## CONCLUSION

It is respectfully submitted that HANOVER has met its burden on summary judgment. HANOVER has provided evidence in admissible form that the Infant, G.C., suffered exposure to lead, with concurrent injury, in each of the three policy periods at issue. There exists no evidence in admissible form to dispute same. Since the VERMONT MUTUAL policy fails to guard against stacking of multiple policies, a loss occurred under each policy period in the underlying action. Therefore, HANOVER respectfully seeks a declaration and judgment in its favor in the sum of $488,843.90 plus interest (at 9% per annum), costs, disbursements, and attorney's fees.

DATED: Buffalo, New York

                              Respectfully submitted,

                              /s/ THOMAS P. KAWALEC
                              Thomas P. Kawalec, Esq.
                              Chelus, Herdzik, Speyer & Monte, P.C.
                              Attorneys for Plaintiff
                              THE HANOVER INSURANCE GROUP
                              Office and Post Office Address
                              Main Court Building
                              438 Main Street, Tenth Floor
                              Buffalo, New York 14202
                              Telephone: (716) 852-3600

                              /s/KATELYN E. DIEFFENDERFER
                              Katelyn E. Dieffenderfer, Esq.
                              Chelus, Herdzik, Speyer & Monte, P.C.
                              Attorneys for Plaintiff
                              THE HANOVER INSURANCE GROUP
                              Office and Post Office Address
                              Main Court Building
                              438 Main Street, Tenth Floor
                              Buffalo, New York 14202
                              Telephone: (716) 852-3600

KED:eka:tpk
303-12-16-138
Doc #667504.1