UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HANOVER INSURANCE COMPANY

       Plaintiff,

       v.                                          1:13-cv-860

VERMONT MUTUAL INSURANCE
COMPANY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION AND ORDER

Before the Court are the parties' motions for summary judgment in this case involving insurers' obligations to fund a judgment against an insured in a lead-paint exposure case. See dkt. #s 31, 33. The matter has been briefed and is ripe for disposition.

**I.    BACKGROUND**

The dispute in this case concerns insurers' responsibility for contributing to a judgment entered against insured property owners Ralph and Nancy Palen ("the Palens") for exposing a child to lead paint. Plaintiff Hanover Insurance Company ("Hanover") served as excess insurer in the underlying case. Defendant Vermont Mutual Insurance Company ("Vermont") was the primary insurer on the property in question. Exposure to lead paint injured a minor. The parties do not dispute their duty to provide coverage under the policy; they disagree about the amount of coverage

Vermont is required to provide, and thus whether Hanover's excess coverage should be invoked. The lead exposure occurred over a period covered by three different liability policies issued by Vermont. Each policy had a $300,000 limit. Plaintiff argues that those policies should be stacked, providing $900,000 in coverage and obviating any need for Hanover's excess insurance. Vermont argues that the policies' unambiguous terms make injury from asbestos exposure a single occurrence and confines coverage to the limits on a single policy, $300,000.

G.C., a child, along with his parents Joann and Christopher Concepcion, rented an apartment in a building located at 26 West Chester Street, Kingston, New York owned by the Palens from November 5, 2003 until around December 5, 2004. (Plaintiff's Statement of Undisputed Material Facts, dkt. # 33-2 ("Plaintiff's Statement") at ¶¶ 9-12; Defendant's Statement of Undisputed Material Facts ("Defendant's Statement") at ¶ 22)[1]. In September 2007, Joann Concepcion, as parent and natural guardian of G.C., brought an action against the Palens in the Supreme Court of Ulster County, New York. (Defendant's Statement at ¶ 40). Concepcion claimed that G.C. had been exposed to lead paint while living in the apartment, and that the apartment contained large amount of lead paint chips and dust. (Id. at ¶ 41). In March 2012 a jury returned a verdict for the plaintiffs in that state-court action, awarding $770,000 to Concepcion. (Id. ¶ 47). The parties then reached a settlement for $809,181.81. (Id.). Vermont and Hanover thereafter reached an agreement to fund the settlement. (Id. at ¶ 48). Vermont agreed to contribute $300,000, as well as $18,843.91 in interest. (Id.).

---

[1]As required by the local rules, each party filed a statement of material facts. The Court will cite to Defendant's statement for those facts where no dispute exists.

Hanover agreed to contribute $470,000, as well as $18,843.91 in interest. (Id.). The parties reserved their right to litigate the issue of each insurer's responsibility for the settlement. (Id.).

Hanover filed a declaratory judgment Complaint in this Court on July 19, 2013. See dkt. # 1. Hanover filed an Amended Complaint on October 20, 2013. See dkt. # 12. Hanover sought a ruling from the Court that Vermont was obligated as primary insurer to pay up to $900,000 to satisfy the judgment in the Concepcion case. Hanover therefore sought judgment against Vermont for $488,843.90, plus interest, to cover the amount Hanover had already paid as excess insurer.

## II. ANALYSIS

### A. Legal Standard

Both parties have filed motions for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a

3

dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

This case involves interpretations of insurance contracts.[2]  In New York, "an insurance policy is a contract that is construed to effectuate the intent of the parties as expressed by their words and purposes."  Dicola v. American S.S. Owners Mut. Protection and Indem. Assoc., 158 F.3d 65, 77 (2d Cir. 1998).  Courts resolving disputes "'over insurance coverage . . . first look to the language of the policy.'"  Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co., 21 N.Y. 3d 139, 148, 991 N.E.2d 666, 671 (2013) (quoting Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co., 98 N.Y. 2d 208, 222, 774 N.E. 2d 687 (2002)).  In interpreting the policy, a court is to "'construe the policy in a way that 'affords a fair meaning to all of the language employed by the parties in the contract and leave no provision without force and effect.'"  Id.  (quoting Consolidated Edison, 98 N.Y. 2d at 222)).  "'Unambiguous terms are to be given their plain and ordinary meaning."  Dicola, 158 F.3d at 77 (quoting State

---

[2]The parties agree that New York law applies to this diversity action.

4

of New York v. Blank, 27 F.3d 783, 792 (2d Cir. 1994)).  Ambiguity exists when the policy "'is reasonably susceptible to more than one reading.'"  Id. (quoting Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998)).  The Court decides "as a matter of law" whether the policy is ambiguous.  Id.

### B. Application of the Legal Standards

Neither party disputes that the insureds were entitled to coverage in this action.  The dispute is simply about the extent of coverage the primary carrier, Vermont, was obligated to provide.  Hanover does not deny that, as excess carrier, it is obligated to satisfy any portion of the settlement not covered by Vermont.  Hanover simply contends that the three policies that covered the apartment during the periods when the Concepcions lived there should be stacked, resulting in $900,000 of available coverage.  Vermont avers that the contract language is clear, and that the policies provide coverage only for one policy period, or $300,000.

#### i. Vermont Policies at Issue

The issue here is over the application of the Vermont policies.  Vermont issued a policy, number DF13023171, to Ralph and Nancy Phalen, effective from November 18, 2002 to November 18, 2003.  (Defendant's Statement at ¶ 1).  That policy had liability limits of $300,000 per occurrence.  (Defendant's Statement at ¶ 2).  Vermont renewed that policy, using the same number, for the period from November 18, 2003 to November 18, 2004.  (Defendant's Statement at ¶ 7).  The liability limits were again $300,000 per occurrence.  (Id. at ¶ 8).  The policy again renewed under the same number, covering the period from November 18, 2004 to November 18, 2005.

5

(Defendant's Statement at ¶ 10). The liability limits were $300,000 per occurrence. (Defendant's Statement at ¶ 11).

Each of those policies defined an "occurrence" in relevant part as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, which results, during the policy period, in: a. 'bodily injury.'" (Defendant's Statement at ¶ 3). In the policy, a "bodily injury" is "bodily harm, sickness or disease, including required care, loss of services and death that results." (See Insurance Policy, Exh. N to Plaintiff's motion, dkt. # 33-19). The policy also lists as a "condition" a limit on liability that states:

> Limit of Liability. Our total coverage under Coverage L for all damages resulting from any one 'occurrence' will not be more than the limit of liability for Coverage L [$300,000] as shown in the Declarations. This limit is the same regardless of the number of 'insureds,' claims made or persons injured. All 'bodily injury' and 'property damage' resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one 'occurrence.'

(Defendant's Statement at ¶ 4). Each of the three policies here in question contained identical provisions. (Id. at ¶¶ 9, 12).

These three policies are at issue because the Concepcions and their injured son, G.C., resided at the insured premises from November 5, 2013 to around December 5, 2014. (Id. at ¶ 22). The injured minor resided in the home during at least a portion of the time covered by each of the three polices. If Plaintiff is correct that all the policies in place during G.C.'s residency at the insured property should be stacked to provide $900,000 in coverage, then those three policies would apply.

6

## ii. Parties' Arguments

Plaintiff Hanover argues that the coverage on the three Vermont policies should be stacked for the entire period during which the Concepcions lived at the property. Such stacking would obligate Vermont to provide $900,000 in coverage and obviate any need for excess coverage from Hanover. Plaintiff argues that G.C. suffered a bodily injury due to exposure to lead on the day he moved into the apartment, and that such injury continued for as long as his family resided there. Moreover, Plaintiff argues, though the policy contains a clause limiting liability to the policy limits, regardless of the number of insureds, claims or persons injury, that limitation does not reference other insurance policies. This failure to list other policies means that stacking can apply, as New York courts have permitting stacking of successive policies when no clause in the insurance contract prohibits such action. Vermont, Hanover contends, did not include any clear language limiting stacking in its non-cumulation clause, and such stacking is therefore permissible under the policy. Failing to permit stacking, Hanover argues, would provide Vermont with a "windfall," since the Palens had paid for coverage for three policy periods, yet received the benefit of coverage from only one of those periods.

Defendant insists that the coverage available is limited to $300,000, the value of the policy in place when G.C.'s injury occurred. The clear language of the policies in question limit coverage to a single occurrence, which includes continuous and repeated exposure to the same general harmful condition. G.C.'s bodily injury from lead exposure counts as a single occurrence, and coverage is therefore limited to the policy limits at the time when bodily injury occurred. That limit applies, Defendant contends,

7

even if exposure continued into other policy years.  Even if this policy language did not apply, Defendant argues, stacking of the policies is precluded by two doctrines: the "unfortunate event test" and the "fortuity doctrine."  Defendant contends that, even if G.C.'s injuries could be considered separate events, they were the same type of event and occurred in such temporal proximity that the unfortunate event test dictates that they should be considered one event for coverage purposes.  Similarly, since the insureds knew of the claims for lead-paint exposure made under their policy, Defendant argues that the fortuity doctrine prohibits them from claiming insurance benefits for such exposure.  Finally, Defendant contends that the language of the policy obligates Defendant to provide only the $300,000 policy limits, entitling Vermont to a refund on the pre-judgment interest paid.

    **iii.    Analysis**

This case turns on the language of the policies in question.  The Court finds that the clear language of the policies in question prevents stacking.  G.C. clearly suffered an injury-in-fact from exposure to lead paint, but that injury created a single occurrence and the policy language limits coverage to the limits available on the policy in place when that injury-in-fact occurred.  For reasons that will be explained, the parties' arguments on the exact timing of G.C.'s injury and the consequences of his continued exposure to lead paint are immaterial to this conclusion.  The clear language of the policies in question dictates the outcome of this case.

In <u>Hiraldo v. Allstate Ins. Co.</u>, 5 N.Y. 3d 508, 840 N.E. 3d 563 (N.Y. 2005), the New York Court of Appeals examined whether a child who had been exposed to lead

paint for a period of three years was entitled to the policy limits of each of the three policies in place during those three years. The three polices were all issued by the defendant insurer, and contained a clause stating that:

> [r]egardless of the number of insured persons, claims, claimants or *policies* involved, our total liability under the Business Liability Protection coverage for damages resulting from one loss will not exceed the limit of liability for Coverage X shown on the declarations page. All bodily injury, personal and property damage resulting from one accident or from continuous or repeated exposure to the same general conditions is considered the result of one loss.

Id. at 512 (emphasis in original). The court noted that other courts had found "that successive policy limits may be cumulatively applied to a single loss, where the policies do not clearly provide otherwise." Id. (citing National Union Fire Ins. Co. of Pittsburgh, Pa. v. Farmington Cas. Co., 1 Misc. 3d 671, 765 N.Y.S. 2d 763 (Sup. Ct., NY County 2003); Riley v. United Servs. Auto. Assn., 161 Md. App. 573, 871, A.2d 599 (Ct. Spec. App. 2005)).

In Hiraldo, however, the policies in question "clearly" stated otherwise. Id. at 513. Since the polices specifically limited recovery to the policy limit at the time of the injury, the Court found that the limits on the policy in place at the time of the injury were the total policy limits. Id. Other courts have come to the same conclusion based on similar language. In Greenidge v. Allstate Ins. Co., 312 F.Supp.2d 430 (S.D.N.Y. 2004), the court concluded that policy language that contained a clause limiting policy liability to the limits on the policy in place at the time of the occurrence of lead exposure, "'regardless of the number of . . . policies involved'" capped the insurer's liability at the limits on the initial policy. Id. at 440; see also, Bahar v. Allstate Ins. Co., No. 01cv8129, 2004 U.S. Dist. LEXIS 15612, *10 (S.D.N.Y. Aug. 9, 2004) (Allstate's

9

payment of policy limits on one policy was permissible because "Plaintiff's continuous exposure to and ingestion of lead was one occurrence sustained over the period of several years" and several policies"); Greene v. Allstate Ins. Co., No. 03civ5974, 2004 U.S. Dist. LEXIS 10860 at *5-*6 (S.D.N.Y. June 15, 2004) (clause in policy providing that "all bodily injury, personal injury and property damages resulting from accident or from continuous or repeated exposure to the same general conditions is considered the result of one loss" meant that the policy limits were those on the policy at initial exposure); Nesmith v. Allstate Ins. Co., 103 A.D. 3d 190, 192. 958 N.Y.S. 2d 817, 819 (4th Dept. 2013) (finding that liability was limited to one policy by policy provisions establishing that "[r]egardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one accidental loss will not exceed the limit shown on the declarations page. All bodily injury and property damage resulting from one accidental loss or from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss.").

Courts in New York, therefore, have concluded that the language of the policies in question determines whether policies that cover injuries caused by continual exposure to dangerous conditions such as lead or asbestos can be stacked for the entire period that the injured person is exposed to that dangerous condition. The insurance policies here in question contain provisions defining terms similar to those used in the policies in Hiraldo. An "occurrence" in relevant part is: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in a. 'bodily injury.'" (Defendant's

10

Statement at ¶ 3). In the policy, a "bodily injury" is "bodily harm, sickness or disease, including required care, loss of services and death that results." (See Insurance Policy, Exh. D to Plaintiff's motion, dkt. # 33-19). Most important, the policy also lists as a "condition" a limit on liability that states:

> Limit of Liability. Our total coverage under Coverage L for all damages resulting from any one 'occurrence' will not be more than the limit of liability for Coverage L [$300,000] as shown in the Declarations. This limit is the same regardless of the number of 'insureds,' claims made or persons injured. All 'bodily injury' and 'property damage' resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one 'occurrence.'

(Defendant's Statement at ¶ 4).

The policy here clearly limits liability to the policy limits for any one occurrence, and limits the definition of occurrence to include "continuous or repeated exposure to substantially the same general conditions[.]" Such definitions are clear and unambiguous and define exactly the situation that occurred in this case. Here, the parties agree that G.C. suffered a bodily injury by exposure to lead paint in the apartment covered by the insurance policies in question. They also agree that the bodily injury occurred while one of the policies was in place. The parties also agree that G.C. continued to be exposed to the generally harmful condition of lead paint during the remainder of his residency in the apartment. By the clearly stated definition in the policy, exposure to those conditions constituted a single "occurrence," and the coverage available for G.C.'s injuries, like that available to the Hiraldo plaintiffs, is limited by the policy language to the coverage available in that policy. The policy in question clearly prevents stacking of policy limits during the entire period of exposure. In other words,

11

Vermont is correct to argue that the policies cannot be stacked, and the coverage available is $300,000 plus pre-judgment interest. The Court will therefore grant the Defendant's motion for summary judgment.

Plaintiff's attempt to distinguish this case from Hiraldo is misplaced. Plaintiff points out that the "non-cumulation" clause at issue in Hiraldo contained language not included in the similar clause in this case. Plaintiff argues that the Hiraldo policy limited coverage to the limits of the single policy "[r]egardless of the number of insured persons, injured persons, claims, claimants, or policies involved." Emphasizing that the court noted that the language disregarded the number of policies involved, Plaintiff contends that the court's opinion turned on the use of the phrase "policies involved." Since the Vermont policy does not contain that phrase, Plaintiff argues, the court should find that the policy does not prohibit the stacking of consecutively issued policies.

The Court disagrees with the Plaintiff on this reading of Hiraldo. The Hiraldo court analyzed the clause in question using a hoary principle of insurance law: "the clear language of the policies answers the question" of whether the consecutive policies can be stacked. Hiraldo, 5 N.Y.3d 508. The court quoted the policy language and found that the child's injuries "alleged resulted form 'continuous . . . exposure to the same general conditions' and so from 'one loss' within the meaning of each policy." Id. at 512. While the Court mentioned the number of policies involved, the Court also cited the federal cases referenced above to support the notion that an insurer could write a policy to exclude the sort of stacking at issue here by defining an occurrence as Vermont does here. In this case, there was only one occurrence within the meaning of the policy, and thus only one of the three policies in question can apply.

12

The parties expend considerable energy on the exact date on which G.C. could be said to have suffered an injury, with Defendant attempting to confine that date in the second policy period and Plaintiff attempting to define G.C.'s injuries as continuous and occurring in each of the three policy periods. The Court's finding that the policy language clearly and unambiguously limits coverage to the limits of the policy in place at the time of the injury-in-fact, even when the exposure is ongoing makes the exact date of the injury immaterial. In any case, New York law also establishes that policies like the ones in question define injury in a way that preclude's Plaintiff's proposed construction of the policy. The language in the policies ensures that only one injury-in-fact occurred. Plaintiff's attempt to avoid this language fails.

When, as here, an insurance policy premises coverage based on an "occurrence," which is defined as "an event . . . which results in personal injury . . . sustained, during the policy period," coverage does not depend on "temporal relevance to the causative event preceding the covered injury, but rather [the policy] premises coverage exclusively upon the sustaining of the specified injuries during the policy period." National Casualty Ins. Co. v. Mt. Vernon, 128 A.D. 2d 332, 336, 515 N.Y.S. 2d 267, 270 (2d Dept. 1987). In New York, an occurrence-based policy provides coverage "based upon the occurrence of an injury-in-fact during the policy period." Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1194 (2d Cir. 1995). A Plaintiff is not required, however, to have an injury "diagnosable during the policy period[.]" Mount Vernon Fire Ins. Co. v. Abesl Realty Corp., 288 F.Supp.2d 302, 308 (E.D.N.Y. 2003). Thus, "'a real but undiscovered *injury*, proved in retrospect to have existed at the relevant time, would establish coverage, irrespective of the time the injury became

13

[diagnosable]." Id. (quoting American Home Products Corp. v. Liberty Mutual Ins. Co., 748 F.2d 760, 766 (2d Cir. 1984) (emphasis in original). The event triggering coverage is not exposure to the source of the injury, but a bodily injury that is the result of that exposure. See, e.g., Van Wyck Associates v. St. Paul Fire & Marine Ins. Co., 115 Misc. 2d 447, 451, 454 N.Y.S.2d 266, 270 (Queens Cty., 1982). An "injury-in-fact" occurs "when the injury, sickness, disease or disability actually began[.]" Cont'l Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 651, 609 N.E. 2d 506, 511 (N.Y. 1993). To recover, an insured "must show that an injury occurred during the policy period and that it occurred as a result of an accident or injurious exposure." Continental Cas. Co. v. Employers Ins. Co. of Wausau, 60 A.D.3d 128, 144, 871 N.Y.S.2d 48, 60 (1st Dept. 2008). In other words, in these types of policies, continual exposure does not create repeated bodily injury. Coverage is instead triggered by an injury-in-fact. Whether G.C. faced continual exposure during all policies is immaterial. There is no plausible argument that he faced more than one injury-in-fact. His injury was therefore a single occurrence as defined by the policies in question.

Plaintiff's reliance on the expert report of Joel Redfield, PhD, helps make this point. (See Exh. A to Plaintiff's Motion). Redfield's report, dated July 22, 2014, purports to address four questions: "1. When did the infant's exposure to lead begin? 2. When did the infant's exposure to lead end? When did they injury begin? When did the infant's injury end, if this can be determiend?" (Id.). Using medical records that show the levels of lead in G.C.'s blood as measured from December 15, 2003 until May 7, 2008 and information on an inspection of the insured property by the Ulster County Health Department on November 18, 2004, Dr. Redfield attempts to answer these

14

questions. (Id.). He concludes that G.C.'s exposure to lead and injury began at the same time, "several weeks prior to December 15, 2003, likely around the date that he moved into" the apartment. (Id.). The exposure to lead from outside the body ended when G.C. and his family vacated the apartment, though his body continued to contain lead under May 2008. (Id.).

Plaintiff's position is that this report demonstrates that G.C. suffered an injury covered by each of the three policies; G.C. was continually exposed to lead during his entire residency in the insured property, and Dr. Redfield finds that this injury was therefore ongoing. Defendant argues that testimony on whether G.C. was injured in all three policy periods amounts to a legal conclusions, and should not be considered proper expert testimony. Defendant is correct that legal conclusions are not a proper part of expert testimony. See Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992) (the Second Circuit "requir[es] exclusion of expert testimony that expresses a legal conclusion."). The Court finds the report unhelpful to the Plaintiff for another reason.

Dr. Redfield's opinion underscores the fact that, in terms of the policy language in question, G.C.'s injury was a single "occurrence." While Dr Redfield finds that exposure began when G.C. moved into the apartment and continued until after he left the building, Dr. Redfield does not opine that some new injury occurred each time G.C. faced exposure to lead paint. Indeed, he provides a specific date for the occurrence of a bodily injury: "around the date that [G.C.] moved into" the property. Accepting Dr. Redfield's findings would not alter the outcome of the case. Continuous exposure does not create a new occurrence or bodily injury covered by the policy, and Dr. Redfield identifies a date within one of the policy periods on which G.C. suffered an injury. At

15

best, then, his opinion establishes the date for an "injury-in-fact" during the first policy period, while Defendant insists that the injury came in the second period. Whether G.C.'s injury occurred during the first or the second policy period, the outcome would be the same: Vermont is obligated to provide up to the liability limits available under the policy in place at the time of the injury-in-fact, which amounts to a triggering event under the occurrence-based policies in question.

Plaintiff offers an equitable argument for stacking that is similarly misplaced. Plaintiff argues that "[t]he Palens, as landlords, would unlikely have renewed their VERMONT MUTUAL policy had they known that VERMONT MUTUAL would happily collect the policy premium for coverage that included injury caused by exposure to lead paint during all three policy periods but merely provided such coverage for the first of three years." This argument, which raises the issue of unjust enrichment, is unpersuasive. The Palens bought policies which provided them with insurance coverage for each of the three one-year periods, not just for lead-paint coverage, but for any other liability their ownership of the building exposed them to. The insurance contract provided specific coverage for a specific period of time, and the Palens paid a premium for the coverage during that period. The Palens have received the benefit of their bargain, since they have received insurance coverage for an injury that occurred during the time that one of the policies they purchased provided coverage. As explained above, the language of the policy makes clear that an injury from lead exposure occurs once, even if the exposure continues over time. Coverage to the policy limits for the period when the occurrence took place ensures that the Palens got what they paid for.

Indeed, New York courts have pointed out that the outcome urged by Plaintiff would actually force Defendant to undertake a risk not contemplated when selling insurance to the Palens: exposure for multiple years under a single policy. In the asbestos context, courts have found that "the purpose of defining all exposure as one occurrence is to make clear that only one deductible will apply, and that the limit of liability, where an insurer has issued renewal policies, shall be limits for one policy, rather than the aggregate for all policies issued." In re Liquidation of Midland Insurance, 269 A.D. 2d 50, 60, 709 N.Y.S.2d 24, 31 (1st Dept. 2000). Without such limitation, "an insurer that issues a $1 million liability policy renewed 20 times could find itself liable for $20 million in damages claims for the same injury." Id. Vermont did not write such a policy and did not charge premiums to the Palens that reflected such escalating coverage.

Indeed, Plaintiff cites to no testimony from the Palens that indicates that they expected their coverage to stack for each year they renewed their policy. The fact that the Palens bought the disputed excess coverage from Hanover over which the parties are fighting would appear to provide evidence that the Palens at least recognized the insufficiency of the $300,000 in coverage they purchased for their rental property. Plaintiff's alleged concern that the Palens receive the benefit of their bargain seems less focused on protecting the Palens' pockets (they are out only the premiums they paid in any case) than on avoiding Hannover's obligations as excess insurer. The Court rejects this position.

Because the Court has found that the policy language in question clearly and unequivocally establishes that coverage is limited to the policy that was in place at the

17

time of the injury-in-fact, the Court declines to address Defendant's unfortunate event test and fortuity arguments for why Plaintiff should not be able to assert that coverage applies under the third policy. The Court will grant the Defendant's motion for summary judgment and deny the Plaintiff's with respect to the question of coverage.

### v. Pre-Judgment Interest

Defendant contends that the policy exclusions limiting coverage for one occurrence to $300,000 also limit the payment of any pre-judgment interest. Because the policy limit was reached in the judgment, Defendant argues that no additional payment is required on the policy and Vermont is entitled to a refund for the amount of interest paid. Hanover does not reply directly to this argument. Hanover instead claims that Defendant is obligated to pay the entire amount of the judgment and thus refund Hanover for any funds paid. Since the Court has concluded that Vermont is liable only to the limits of one policy and Hanover does not contest Vermont's argument, the Court will grant this portion of the motion as well.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, dkt. # 31, is **GRANTED**. Plaintiff's motion for summary judgment, dkt. # 33, is **DENIED**. The Court hereby declares that:

> (1) Vermont is not required to tender any additional policy limits as part of the settlement of the underlying case;
>
> (2) Hanover's excess policy attaches at $300,000, the exhaustion of one Vermont policy limit;

18

(3) Hanover is fully responsible for payment of the prejudgment interest on the verdict; and

(4) Hanover shall reimburse Vermont for the amount of prejudgment interest Vermont paid ($18,843.91).

**DATED:** November 13, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge